EL CONVENTO DE LAS R. R. M. M. CARMELITAS *v.* SILVA.

APELACIÓN contra sentencia condenatoria de la Corte de Distrito de San Juan.

No. 77.—Resuelto en junio 29, 1907.

CAMBIOS—CIRCULACIÓN DE LAS MONEDAS EXTRANJERAS—MONEDA OFICIAL.—Aun cuando la circulación de las monedas norteamericanas, francesas y mejicanas, estuvo autorizada en Puerto Rico, y á dichas monedas se fijó un valor legal en relación con la oficial, nunca tuvieron el carácter de *moneda oficial,* que estuvo reservado á la moneda fuerte de cuño español, autorizada su circulación por R. D. de 1857, hasta el año 1895, en que la moneda mejicana fué sustituída por la *especial* creada para Puerto Rico y cuyo valor no era igual al de la moneda española.

ID.—CANJE DE LA MONEDA ESPECIAL—MONEDA ESPAÑOLA.—El canje de la moneda decretado por la sección 11 de la Ley Orgánica se refiere únicamente á la moneda especial de Puerto Rico y no comprende la moneda propiamente española, ni ninguna otra clase de moneda extranjera, debiendo reputarse aquélla y éstas como mercancías, cuyo valor está sujeto á las oscilaciones del cambio.

ID.—OBLIGACIONES CONSTITUÍDAS EN MONEDA ESPAÑOLA—TIPO Á QUE DEBE AJUSTARSE EL PAGO DE LAS MISMAS.—El pago de las obligaciones constituídas en moneda española, debe hacerse en la misma moneda, ó en moneda americana, pero no al tipo de canje establecido en la Ley Orgánica de Puerto Rico, sino al *tipo corriente en plaza.*

ID.—CONSIGNACIÓN DEL IMPORTE DE LA OBLIGACIÓN.—La consignación hecha ante un notario, y no ante la autoridad judicial, y la hecha por una cantidad menor que la debida, no es eficaz para relevar al deudor de la responsabilidad contraída por su obligación.

ID.—NATURALEZA DEL CENSO—REDENCIÓN DEL CENSO.—Aunque sea de la naturaleza del censo que la cesión del capital ó de la cosa inmueble sea perpetua ó por tiempo indefinido, sin embargo, una cláusula al efecto de que transcurridas dos anualidades de los réditos de un censo sin haber sido satisfechos, deba el censatario redimir y entregar el capital del censo es válida y no puede estimarse contraria el precepto del artículo 1511 del Código Civil.

ID.—CARTAS DOTALES Ú OBLIGACIONES HIPOTECARIAS.—En los casos en que la obligación participe de la naturaleza de carta dotal, ó tenga el carácter de hipotecaria, las disposiciones del artículo 1511 del Código Civil no podrían ser de aplicación en modo alguno.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Morera Martínez.*

Abogado del apelado: *Sr. Falcón.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ, emitió la opinión del tribunal.

Por escritura pública otorgada en esta ciudad á 9 de marzo de 1867 ante el Escribano Real y Público D. Juan Basilio Núñez, impuso y reconoció Don Manuel F. Fernández á censo y tributo la cantidad de dos mil pesos *fuertes* sobre una casa de altos y bajos, de piedra y azotea, de la propiedad del Fernández, situada en la calle de San Justo de esta ciudad y marcada con el número 18 del Gobierno, para que aquella cantidad sirviera de dote á su legítima hija Doña María del Carmen Fernández y Umpierre, que intentaba profesar de religiosa en el convento de Reverendas Madres Carmelitas de esta ciudad, y con las rentas de la referida suma al cinco por ciento anual, que estaba pronto á satisfacer el otorgante al Admor. de dicho Monasterio, pudiera atender y atendiera su mencionada hija á las cargas propias de su profesión, á cuyo efecto subsistiría el capital de dos mil pesos *fuertes* sobre la casa de referencia, con obligación por parte del Fernández y sus legítimos sucesores en el dominio de ella de pagar cumplida y religiosamente los réditos correspondientes en el concepto de que transcurridas dos anualidades sin haber sido satisfechos, estaban obligados, tanto Fernández como sus herederos y sucesores, á redimir y entregar el capital para su imposición en otra finca, ó para lo que en ese caso dispusiera el tribunal competente, sin que pudiera tener efecto la redención ni tras-

paso del mismo capital, en todo ó en parte, sin expreso cono-
cimiento y consentimiento del expresado tribunal, entendién-
dose además, que los réditos habían de ser pagados al venci-
miento de cada año, libres de toda carga y contribución, y
quedando hipotecada la repetida casa al cumplimiento de lo
consignado en dicha escritura, en la cual, además, se hizo
constar que los dos mil pesos reconocidos procedían de seis
mil ochocientos cuarenta y un pesos cuarenta y nueve y un
quinto centavos, que Fernández tenía en su poder pertene-
cientes á su referida hija, á la que fueron adjudicados, en vir-
tud del legado del tercio de sus bienes que la hiciera su difunta
abuela paterna Da. Francisca Martínez.

Por otra escritura pública otorgada ante el propio notario,
en el mismo día 9 de marzo de 1867, el citado Don Manuel F.
Fernández impuso y reconoció además, otra cantidad de dos
mil pesos *fuertes,* á censo y tributo, sobre la casa anterior-
mente descrita, para que aquella cantidad sirviera de dote á
Doña Peregrina. Navarro y Lemos, que también intentaba
profesar en el convento de Reverendas Madres Carmelitas de
esta ciudad, y á la que Da. María del Carmen Fernández y
Umpierre había ofrecido la constitución de dote con parte del
capital que tenía en poder de su padre D. Manuel F. Fernán-
dez, conteniendo dicha escritura las mismas condiciones, obli-
gaciones y cláusulas que la anterior.

Dueño Don Julián Silva de la casa sobre la cual gravitan
las cargas de referencia, se negó á pagar los réditos corres-
pondientes á los años de 1903 y 1904, por haber surgido dife-
rencias entre el deudor Silva y Don Manuel Díaz Caneja,
colector de obras pías del Obispado Católico de Puerto Rico y
administrador de los bienes y derechos del monasterio ó con-
vento de Carmelitas, sobre la cantidad que en concepto de
réditos debían ser pagados por esos dos años, pues mientras
la comunidad de Reverendas Madres Carmelitas, represen-
tada por Díaz Caneja, pretendía se le pagaran cuatrocientos
pesos *fuertes* españoles ó su equivalente en oro americano, al
tipo corriente en plaza, por los dos años expresados, Silva

sólo estaba dispuesto á pagar doscientos cuarenta pesos de la moneda americana hoy corriente, cantidad que en 2 de marzo de 1905 entregó al notario público de esta ciudad, D. Julio César González, para que por éste fuera entregada á Díaz Caneja, el cual se negó á recibirla por no ser esa la cantidad adeudada, según se hizo constar en acta de requerimiento de la misma fecha.

Los hechos que se dejan expuestos dieron lugar á que D. Manuel Díaz Caneja, como colector de obras pías del Obispado Católico de Puerto Rico y administrador de los bienes y derechos del monasterio ó convento de Carmelitas, produjera ante la corte de distrito de San Juan, en 18 de marzo de 1905, demanda contra D. Julián Silva, con súplica de que previos los trámites de ley, fuera condenado Silva en su día á la devolución de los cuatro mil pesos, que montaban las cargas impuestas sobre la casa No. 18 de la calle de San Justo, que estaba poseyendo Silva, y al pago de los réditos vencidos desde 1º. de enero de 1903 y que sigan venciendo al cinco por ciento, sin descuento alguno, todo en moneda *fuerte* española ó su equivalente en oro americano, al tipo corriente en plaza, más los intereses legales de dichos réditos que dejaron de pagarse oportunamente, con las costas á cargo del demandado.

D. Julián Silva al contestar la demanda se opuso á ella, alegando que no cabe pretender una oscilación constante en el pago de los intereses de que se trata, sujetándolos al tipo que tenga en plaza el cambio cuando se haga el pago de ellos; que la moneda española tuvo en su época el canje correspondiente, siendo sustituída por otra hasta llegar á la hoy corriente, que es oro americano; y que la devolución del capital de los capitales es improcedente, pues la falta de pago de las dos últimas anualidades ha dependido del mismo demandante que ha podido aceptar el pago que trató de hacérsele mediante requerimiento notarial, sin perjuicio de gestionar los derechos de que se creyera asistido, aparte de que el censualista no puede reclamar tal devolución por estar reservada únicamente al censatario la redención del censo, aun en el caso de que exista

pacto en contrario; por lo que suplicó el demandado fuera declarada sin lugar la demanda con las costas al demandante, ordenando que éste, en el carácter con que gestiona, perciba la cantidad consignada por Silva, que es la de doscientos cuarenta dollars, como pago de las dos anualidades pendientes, por ser esa cantidad la que corresponde pagar, hecha la deducción del cuarenta por ciento, por razón del canje de la moneda, ya realizado al tipo expresado.

La Corte de Distrito de San Juan, por sentencia de 21 de agosto del año próximo pasado, declaró que los hechos y el derecho están en contra de la parte demandante, y en su virtud declaró la demanda sin lugar con las costas á cargo de la misma, contra cuya sentencia interpuso la representación de las Reverendas Madres Carmelitas recurso de apelación, que hoy pende de decisión ante esta Corte Suprema, después de vistas y oídas las alegaciones, así escritas como orales, de los abogados de ambas partes.

Las cuestiones legales á discutir y resolver en el presente pleito son las siguientes:

1ª. Si el pago de los réditos de los dos capitales de que se trata debe hacerse en moneda americana al tipo de cambio prevenido por la sección 11ª. de la Ley Orgánica de Puerto Rico, aprobada en 12 de abril de 1900, según alega el demandado, ó si por el contrario debe hacerse en moneda española ó su equivalente en oro americano, al tipo corriente en plaza, según pretende el demandante.

2ª. Si no habiendo verificado Silva el pago de dos anualidades vencidas de los dos capitales, debe ser compelido á la devolución de los mismos.

En cuanto á la primera cuestión, somos de opinión que la sección 11ª. de la Ley Orgánica de Puerto Rico no es aplicable al presente caso.   Veámoslo.

Por Real Decreto de 5 de mayo de 1857 se dispuso el canje de la moneda macuquina, que entonces circulaba en esta Isla por moneda *fuerte* del cuño español, y con tal motivo el Gobierno General dictó en 27 de julio del mismo año varias dis-

posiciones tendentes á la realización de dicho canje, entre las que se encuentra la señalada con el número 10, por la que se ordenó que desde dicha fecha quedara solamente en curso como oficial y para todas las operaciones de cambio, compras, ventas y demás usos á que está destinada la moneda, la *fuerte* española de cordón, quedando también, al mismo tiempo establecidas en todas las oficinas y para todos los documentos públicos, la contabilidad en pesos *fuertes* y centavos de los mismos.

En dicha clase de moneda, ó sea en pesos *fuertes* españoles, fueron reconocidos los capitales á que se refieren las dos escrituras de 9 de marzo de 1867, otorgadas por D. Manuel F. Fernández.

Posteriormente, ó sea por Real Orden de 20 de noviembre de 1867, fué aprobada la determinación por la que el Gobierno Superior Civil de esta Isla había autorizado la circulación en ella de las monedas de oro y plata norteamericanas y francesas, con el descuento de un cinco por ciento en relación á la moneda española; y por otra R. O. de 26 de marzo de 1877, se acordó que el Estado admitiera en esta Isla la onza española de oro, al tipo ya establecido en el comercio, de diez y siete pesos moneda americana corriente.

De las dos Reales Ordenes citadas se desprende que no sólo la moneda *fuerte* española de cordón, sino también la norteamericana y la francesa tenían circulación oficial en esta Isla, sin que fueran iguales en valor, pues las últimas, con relación á la primera, estaban sujetas á depreciación.

Con el transcurso del tiempo, las monedas de plata mejicana provocaron una crísis monetaria en el país por efecto de la depreciación que sufrían en los mercados extranjeros en relación con el valor legal y oficial que aquí tenían, y para conjurar esa crísis el Gobernador General de esta Isla expidió un Decreto con fecha 18 de noviembre de 1885, ordenando, entre otras cosas, que las monedas de plata mejicana en circulación conservaran el valor oficial que entonces tenían en el

Tesoro Público y en el comercio, y que transcurridos los plazos fijados se marcaran á su introducción por las aduanas todas las monedas de plata mejicana, las cuales no serían admitidas en las cajas del Tesoro ni tendrían curso legal.

Como se ve, las monedas norteamericanas, francesas y mejicanas tuvieron valor legal en Puerto Rico; pero no eran la moneda oficial, cuyo carácter estaba reservado á la moneda española.

En esa situación vino el Real Decreto mandado cumplir en 7 de diciembre de 1895, el que aparece publicado en el No. 148 de la Gaceta Oficial de esta Isla, correspondiente al día 10 del propio diciembre. En ese Real Decreto se ordenó la recogida de la moneda mejicana y se creó en sustitución de los pesos mejicanos circulantes en la Isla una moneda especial, ó sea el peso español de dimensiones y ley exactamente idénticas á las de las monedas de 5 pesetas de las provincias peninsulares, como también se ordenó la recogida y refundición de la moneda divisionaria extranjera circulante en Puerto Rico, y su canje por moneda divisionaria de acuñación especial é idéntica, en cuanto á su ley y tipo, á la moneda similar que entonces circulaba en las referidas provincias. En dicho Real Decreto no hay disposición alguna que equipara la moneda especial á la propiamente española; y antes por el contrario, se dispuso que el Gobierno presentaría á las cortes, cuando la experiencia demostrara su conveniencia, un proyecto de ley autorizando la circulación de aquélla en las provincias de España é Islas adyacentes.

En cuanto al valor de la moneda especial que sustituyó á la mejicana, no fué igual al de la moneda española, pues ambas partes han convenido en que después del canje los giros sobre España se cotizaban del 25 al 33 por ciento.

A la moneda especial creada para Puerto Rico y que aquí circulaba, se refiere el canje por moneda de los Estados Unidos, ordenado por la sección undécima del Acta Orgánica de Puerto Rico de 24 de marzo de 1900, sin que dicho canje com-

prendiera la moneda propiamente española y ninguna otra clase de moneda extranjera, debiendo reputarse, por tanto, esas monedas como mercancía, cuyo valor está sujeto á las oscilaciones del cambio.    Los litigantes han aceptado por mutuo acuerdo el hecho de que desde el mes de julio de 1905, al 9 de agosto siguiente, en que se celebró el juicio, los giros sobre España se cotizaban del 10 al 11 por ciento.

Habiendo sido constituídas en moneda española las obligaciones consignadas en las dos escrituras de 9 de marzo de 1867, es de aplicación á ellas el artículo 1138 del Código Civil vigente, que dice así:

"El pago de las deudas de dinero deberá hacerse en la especie pactada y no siendo posible entregar la especie, en la moneda de plata ú oro que tenga curso legal en Puerto Rico."

Con arreglo al precepto legal transcrito, el demandado D. Julián Silva viene obligado á pagar los réditos de que se trata en moneda española ó también en moneda americana, no al tipo de canje que establece el Acta Orgánica de Puerto Rico, sino al tipo corriente en plaza, en 9 de agosto de 1906, en que se celebró el juicio, debiendo ser ese tipo el de once por ciento, pues si bien ambas partes han convenido en que los giros sobre España se cotizaban del diez al once por ciento, debemos aceptar la cotización de once por ciento como más beneficiosa al demandado.    En tales términos, debe resolverse la primera cuestión legal anteriormente propuesta.

En cuanto á la segunda cuestión, opinamos que la consignación de doscientos cuarenta dollars, hecha por Silva en poder de un notario, no puede estimarse como pago de la obligación á que estaba sujeto de pagar los réditos, pues esa cantidad no era la debida, sino la de cuatrocientos pesos en moneda española ó americana al tipo corriente en plaza, según dejamos expuesto, ni tampoco la consignación se hizo ante la autoridad judicial, por cuyas razones no puede ser eficaz y librarle de responsabilidad, según los artículos 1125, 1145, y 1146 del Código Civil.

Habiendo dejado Silva de pagar dos anualidades vencidas de los dos capitales reclamados, ha incurrido en la obligación de redimirlos y entregarlos, con arreglo á lo convenido en las dos escrituras de nueve de marzo de mil ochocientos sesenta y siete, redención y entrega que por las razones anteriormente consignadas deben tener lugar en moneda española, ó americana, al tipo de canje de once por ciento.

Ni cabe invocar en contrario el artículo 1511 del Código citado, que prescribe ser de la naturaleza del censo que la cesión del capital ó de la cosa inmueble sea perpetua ó por tiempo indefinido, pues el artículo 1222 del mismo Código estatuye que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios á las leyes, á la moral ni al orden público; y no vemos razón alguna para comprender en esa excepción el pacto de que transcurridas dos anualidades de los réditos de un censo sin haber sido satisfechos, deba el censatario redimir y entregar el capital del censo, como sucede hoy respecto de D. Julián Silva.

Y conste que no entramos á discutir por creerlo innecesario, si las escrituras de nueve de marzo de mil ochocientos sesenta y siete son realmente constitutivas de censo consignativo, tal como éste aparece definido por el artículo 1509 del Código Civil, ó si participan de la naturaleza de cartas dotales ú obligaciones hipotecarias, en cuyo caso, bajo concepto alguno, podría serles aplicable el artículo 1511, que en su defensa invoca la representación de Don Julián Silva. Bajo cualquier punto de vista que se las considere, revelan la existencia de obligaciones que hoy afectan á Silva, y á cuyo cumplimiento se encuentra éste sujeto en los términos en que fueron convenidas.

Por las razones expuestas, entendemos que procede la revocación de la sentencia apelada, dictada en 21 de agosto del año próximo pasado, y que en su lugar se dicte otra declarando con lugar la demanda y condenando á Don Julián Silva

á la devolución de los cuatro mil pesos que se le reclaman y al pago de los réditos vencidos y que sigan venciendo á contar desde 1°. de enero de 1903, á razón del cinco por ciento anual, todo en moneda fuerte española, ó su equivalente en oro americano, con el descuento del once por ciento que sufrirá la moneda española con relación á la moneda americana, más los intereses legales de los réditos correspondientes á los años de 1903 y 1904, y con las costas de ambas instancias á cargo del demandado y apelado.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Figueras, MacLeary y Wolf.